IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY CURLEE and BRIDGETTE CURLEE, | § | |
| Plaintiffs, | § | |
| V. | § | No. 3:13-cv-344-P |
| UNITED PARCEL SERVICE CO., ET AL., | § | **FILED UNDER SEAL** |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendants United Parcel Service, Inc. (Ohio) and United Parcel Service Co. (collectively, "Defendants") filed a Motion for Protective Order ("Motion") [Dkt. No. 31]. District Judge Jorge A. Solis has referred the Motion to the undersigned magistrate judge for determination. *See* Dkt. No. 33. Plaintiffs filed their Response to Defendants' Motion, *see* Dkt. No. 39, and Defendants filed their reply, *see* Dkt. No. 47. The Motion is GRANTED.

**Background**

Plaintiffs brought this lawsuit on January 25, 2013, asserting causes of action for false imprisonment, intentional infliction of emotional distress, and civil conspiracy. *See* Dkt. No. 1; Dkt. No. 38 at 6-8. The following facts form the basis of Plaintiffs' causes of action. Plaintiff Rickey Curlee ("Curlee") alleges that upon completion of a night shift, he was taken against his will to an offsite location by Defendant United Parcel Service, Inc. (Ohio) ("UPS"). *See* Dkt. No. 38 at 2-3. Mr. Curlee claims that he

was kept in a room "against his will" for approximately four hours, at which point he was moved to another room in which he was asked questions related to an alleged threat made against Mr. Curlee's supervisor. *Id.* at 3. Mr. Curlee alleges that he was "interrogated, threatened, and demeaned" for hours by UPS corporate security representatives and also accused of "being a terrorist" and forced to provide handwriting samples. *Id.* Mr. Curlee makes additional allegations of threatening comments and demeaning treatment that he claims constituted mental and psychological torment and that the whole ordeal lasted approximately 10 hours. *See id.* at 4-5. Mr. Curlee also alleges that, during the 10-hour investigation, he was not allowed to phone his wife to let her know his whereabouts and that an off-duty Carrollton, Texas police officer was present. *See id.* at 5-6. After the alleged detention, Mr. Curlee was informed that he could not return to work until further notice and was escorted back to the original UPS location to gather his belongings. *See id.* Four days later, UPS informed Mr. Curlee that he could return to his former position. *See id.* at 6.

Defendants do not dispute that they questioned Mr. Curlee regarding the threat made against his supervisor, *see* Dkt. No. 42 at 2-5, but do dispute that Mr. Curlee was ever held against his will or that they interrogated, demeaned, or threatened him, *see id.* at 3. In their Motion, Defendants also explain that, in addition to questioning Mr. Curlee about the threat, UPS also questioned Jonathan Mills, Ralph Woods, and John Christopher Rice. *See* Dkt. No. 31 at 6. One of these individuals – John Christopher Rice ("Rice") – was interviewed on January 27, 2011, a day after Mr. Curlee. *See id.*

After his interview, Rice was placed on temporary administrative leave, from which he returned in April 2011. *See* Dkt. No. 31-2 at 22. Around his time of return, Rice and UPS executed a release and settlement agreement. *See id.* When he returned, Rice was reassigned to his current management position in Denton, Texas. *See id.*

At issue in Defendants' Motion are Plaintiffs' recent discovery requests, including a non-party subpoena to Rice and Plaintiffs' Third Requests for Production ("Third RFPs"). *See* Dkt. No. 31 at 4. Before issuing the subpoena to Rice and serving the Third RFPs, Plaintiffs had served over 100 RFPs and taken nine depositions, including the deposition of Rice. *See id.* at 7-8.

**Legal Standards**

Generally speaking, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). But the Court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "'[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

**Analysis**

Plaintiffs spend several pages reciting the issues that they contend exist with Defendants' prior discovery responses. Plaintiffs have not, however, filed a motion to compel or other motion related to these discovery requests or Defendants' responses, and they are not at issue in the Motion presently before the Court.

At issue in this Motion are Plaintiffs' non-party subpoena to Rice and Plaintiffs' Third RFPs. Plaintiffs' requests in the Third RFPs and subpoena can be categorized as follows: (1) Rice's involvement with UPS's inquiry into the origin of the threat; (2) Rice's employment status subsequent to UPS's inquiry; (3) Rice's settlement agreement with UPS; and (4) Rice's preparation for his deposition in this case. *See* Dkt. No. 31 at 10. There is also a category of requests that seek discovery regarding alleged payments by UPS to Rice's personal counsel, but Defendants do not seek a protective order as to these requests because Defendants responded that no responsive documents exist. *See id.* at 10 n.5.

Defendants seek a protective order as to both the Third RFPs and the Rice subpoena. A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). Defendants argue that good cause exists to enter a protective order as to the Third RFPs for two reasons. First, Defendants argue the requests seek "wholly irrelevant information." Second, Defendants argue, that in addition to, and in light of, the irrelevance of the information sought, the requests "impose undue burden, annoyance, and expense" on UPS and

Rice. Defendants argue that a protective order as to the Rice subpoena should be entered for the same reasons and that, additionally, the subpoena seeks communications protected by UPS's attorney-client privilege and work product protection.

**1. Rice's Involvement with UPS's inquiry into the origin of the threat.**

*RFP No. 1: Produce any and all communication between UPS and Rice from January 27, 2011 to May 1, 2011 relating to the investigation of the Habib Letter.*

Defendants argue that the documents sought by RFP No. 1 are not relevant because Rice was not present at the Carrollton interview location when Mr. Curlee was interviewed and because all of Rice's knowledge of those events would have been provided to him by Mr. Curlee after the interview date. *See* Dkt. No. 31 at 11. Plaintiffs contend that these documents might lead to evidence that would prove Rice's bias or prejudice. *See* Dkt. No. 39. The Court agrees with Defendants that this request does not seek information that would be relevant to Plaintiffs' claims in this case.

Plaintiffs brought claims for false imprisonment and intentional infliction of emotional distress. "The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *See Tex. Farm. Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002).

In support of their argument that these documents are relevant or might reveal bias or prejudice on Rice's part, Plaintiffs argue that UPS questioned Mr. Curlee because he worked for Rice. But the deposition testimony on which Plaintiffs rely to support this contention demonstrates only that Mr. Curlee and Rice were identified by Mr. Curlee's supervisor, who received the threat at issue, as individuals who pronounced his name wrong and that Mr. Curlee worked under Rice and the two were in the same building. *See* Dkt. No. 39-1 at 21. That is not an indication that Mr. Curlee was questioned solely because he worked for Rice.

Moreover, Rice testified at his deposition that he did not follow up with UPS or security as to what happened after Mr. Curlee was led out of the building. *See* Dkt. No. 32-1 at 31. Rice further testified that, after the "interrogations" that he and Mr. Curlee underwent, the two men had "one real conversation" about the events. *Id.* at 38. The men discussed "which way this was going to go," whether they would "seek[] an attorney," and what they wanted to do. *Id.* Rice testified that Mr. Curlee told him his story, and Rice said Mr. Curlee's version of events seemed a little "more intense" than his own. *Id.* This makes plain that Rice was not present when Mr. Curlee was questioned and that any knowledge he has of what occurred came from Mr. Curlee. There is also no indication from this testimony that Rice's communications, or agreements, with UPS would bias or prejudice his testimony in any way.

Plaintiffs therefore have presented no evidence as to how Rice's communications, or any bias or prejudice that they might demonstrate, would be relevant to the elements of Plaintiffs' claims.

While Plaintiffs are correct that settlement information may be discoverable to demonstrate the settling parties' bias, interest, or prejudice, that information is usually relevant and used to establish the bias of a settling co-defendant. *See Cleveland Constr. Inc. v. Whitehouse Hotel Ltd. P'ship*, No. 01-2666, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004). But there is no indication that Rice has any bias or prejudice that would affect Plaintiffs' claims. And Plaintiffs do not attempt to explain what prejudice or bias Rice could have that would relate to the elements of Plaintiffs' claims, especially in light of the fact that Rice has no first-hand knowledge of what occurred on January 26, 2011, the day on which Mr. Curlee alleges he was falsely imprisoned and subjected to intentional infliction of emotional distress. Finally, it appears clear that Plaintiffs have conducted extensive discovery – already serving over 100 RFPs and taking nine depositions, including the deposition of Rice. *See id.* at 7-8. And the Court believes that permitting these discovery requests would constitute a fishing expedition, which the federal discovery rules do not allow.

The Court GRANTS Defendants' Motion as to RFP No. 1.

> *RFP No. 3: Produce any and all communication between Carlos Barrera and Rice from January 27, 2011 to May 1, 2011 relating to the investigation of the Habib Letter.*

The Court finds this request to be subject to the same analysis as RFP No. 1, except that the communication is between a specific individual and Rice. For the same reasons that Defendants' Motion is granted as to RFP No. 1, the Court GRANTS Defendants' Motion as to RFP No. 3.

> *RFP No. 9: Produce any and all communication UPS received from the*

*firm of Farrow-Gillespie & Heath, LLP regarding Rice and the investigation of the Habib Letter from January 27, 2011 to May 1, 2011.*

Farrow-Gillespie & Heath, LLP is the independent law firm representing Rice. Plaintiffs have not proved, or alleged, any connection between Farrow-Gillespie & Heath, LLP and Mr. Curlee or his investigation. Without any connection, this request appears to be subject to the same analysis as RFP No. 1.

For essentially the same reasons that Defendants' Motion is granted as to RFP No. 1, the Court GRANTS Defendants' Motion as to RFP No. 9.

*Subpoena Request No. 1: Any and all communication between [Rice] and UPS between January 27, 2011 and May 1, 2011 regarding any of the following: (a) The Habib Letter; (b) The investigation into the Habib Letter including, but not limited to, the transport and questioning of UPS personnel concerning the Habib Letter; ... (d) Searches by UPS agents or employees of [Rice's] office at the UPS facility in January 2011; (e) Searches by UPS employees, agents or servants of [Rice's] computers at the UPS facility in January 2011; (f) UPS employees, agents or servants following [Rice] to or from any destination in January 2011, including, but not limited to, public roadways; and/or (g) Transporting [Rice] to the UPS facility in Carrollton on January 26 or 27, 2011.*

Plaintiffs' only argument as to the relevance of the documents sought by Subpoena Request No. 1 is that the documents are somehow related to the settlement agreement between Rice and UPS and that a settlement agreement could be relevant to demonstrating Rice's bias. But Plaintiffs have not demonstrated (1) how these documents are related to any settlement agreement or (2) how any bias on Rice's part, assuming any exists, would be relevant to the elements of Plaintiffs' claims for false imprisonment or intentional infliction of emotional distress.

The Court does not find any connection and instead views this request as a fishing expedition, especially in light of the extensive discovery already taken by

Plaintiffs. That approach to discovery is not permitted by the federal rules.

The Court GRANTS Defendants' Motion as to Subpoena Request No. 1.

*Subpoena Request No. 5: Any and all notes, records, or information recorded by [Rice] during or following the January 27, 2011 meeting with UPS personnel including UPS corporate, regional, district, division or area Security/Loss Prevention and/or Human Resources.*

Plaintiffs' only argument, again, as to the relevance of the documents sought by Subpoena Request No. 5 is that they are somehow related to the settlement agreement between Rice and UPS and that the settlement agreement could be relevant to demonstrating Rice's bias. But Plaintiffs have not demonstrated how (1) these documents are related to the settlement agreement, or (2) how any bias on Rice's part, assuming any exists, would be relevant to the elements of false imprisonment or intentional infliction of emotional distress.

For the same reasons that Defendants' Motion is granted as to Subpoena Request No. 1, the Court GRANTS Defendants' Motion as to Subpoena Request No. 5.

*Subpoena Request No. 6: Any personal calendar, diaries, journals, notebooks, or date planners kept by [Rice] from January 26, 2011 to May 1, 2011 related in any way to [Rice's] suspension from work with pay and/or the investigation of the Habib Letter including but not limited to documentation of the following: (a) Telephone calls from UPS; (b) Conversations and/or meetings with Carlos Barrera and/or Georgina Bane; (c) Contact with Leonard Pendergrass, Brantley Bourland, Bernard Herrera, Ed Burnett, Dwain Pinkard, Tony Felts, Greg Wilkins, or Mark Schafner; (d) Transportation to Carrollton on January 27, 2011 and/or the events surrounding the investigation into the Habib Letter on or after January 27, 2011.*

Plaintiffs' only argument as to the relevance of the documents sought by Subpoena Request No. 6 is that they are somehow related to the settlement agreement between Rice and UPS and that the settlement agreement could be relevant to

demonstrating Rice's bias. But, again, Plaintiffs have not demonstrated how (1) these documents are related to the settlement agreement, or (2) how any bias on Rice's part, assuming any exists, would be relevant to the elements of false imprisonment or intentional infliction of emotional distress. The Court does not find any connection and instead views this request as a fishing expedition, especially in light of the extensive discovery already taken by Plaintiffs. The request is also very similar to RFP No. 1, which the Court found to also be a fishing expedition.

The Court GRANTS Defendants' Motion as to Subpoena Request No. 6.

*Subpoena Request No. 8: Any communication including letters or emails sent to UPS by [Rice or Rice's] attorney regarding the January 27, 2011 interview of [Rice] by UPS regional, corporate and district security or the investigation into the Habib Letter.*

This request seeks information related to Rice's interview, held on a different day than Mr. Curlee's interview. Again, Plaintiffs' only argument as to the relevance of the documents sought by Subpoena Request No. 8 is that they are somehow related to the settlement agreement between Rice and UPS and that the settlement agreement could be relevant to demonstrating Rice's bias. Yet again, Plaintiffs have not demonstrated how (1) these documents are related to the settlement agreement, or (2) how any bias on Rice's part, assuming any exists, would be relevant to the elements of false imprisonment or intentional infliction of emotional distress. Because this request appears to be an attempt to engage in an impermissible fishing expedition, the Court GRANTS Defendants' Motion as to Subpoena Request No. 8.

*Subpoena Request No. 9: [Rice's] daily planner (regardless of what it is called) in which you recorded any aspect of the events, conversations, documents or*

> *matters relating to January 26 or 27, 2011 as referenced by you in your Oral Deposition of January 17, 2014 (See Excerpts Chris Rice Depo., at Exhibit "2").*

The Court finds this request to be subject to the same analysis as Subpoena Request No. 6, except that the request seeks a "daily planner." For the same reasons that Defendants' Motion is granted as to Subpoena Request No. 6, the Court GRANTS Defendants' Motion as to Subpoena Request No. 9.

**2. Rice's employment status subsequent to UPS's inquiry.**

> *RFP No. 2: Produce any and all communication between UPS and Rice from January 27, 2011 to May 1, 2011 relating to Rice's employment status at UPS.*

Plaintiffs again argue that this information is relevant because Mr. Curlee worked for Rice and because the information might be related to the settlement agreements, which, Plaintiffs assert, might demonstrate Rice's bias or prejudice. While the Court finds that information related to Rice's continued employment with UPS may be slightly more likely to bear relation to a settlement agreement and demonstrate bias or prejudice, the Court remains unconvinced that this request is anything more than a fishing expedition. The testimony presented to the Court does not support a finding that Rice's continued employment does in fact bias or cause prejudice by Rice and, more importantly, seems to indicate that Rice had little, if any, personal knowledge of the events that Mr. Curlee underwent. The Court also remains unconvinced that any documents that Plaintiffs request with this RFP would be relevant to the elements of their claims of false imprisonment or intentional infliction of emotional distress.

The Court GRANTS Defendants' Motion as to RFP No. 2.

> *RFP No. 4: Produce any and all communication between Carlos Barrera*

*and Rice from January 27, 2011 to May 1, 2011 relating to Rice's employment status at UPS.*

The Court finds this request to be subject to the same analysis as RFP No. 2, except that the communication is between a specific individual and Rice. For the same reasons that Defendants' Motion is granted as to RFP No. 2, the Court GRANTS Defendants' Motion as to RFP No. 4.

*RFP No. 5: Produce any letters or communication or document sent to Rice by Next Air Mail from UPS from January 27, 2011 to May 1, 2011.*

The Court finds this request to be subject to the same analysis as RFP Nos. 1, 2, 3, and 4, except that the requested documents are without limitation – they could pertain to any number of unrelated topics. For the same reasons that Defendants' Motion is granted as to RFP Nos. 1, 2, 3, and 4 and because it is overly broad, the Court GRANTS Defendants' Motion as to RFP No. 5.

*RFP No. 10: Produce any and all communication UPS received from the firm of Farrow-Gillespie & Heath, LLP regarding Rice and his employment with UPS from January 27, 2011 to May 1, 2011.*

Farrow-Gillespie & Heath, LLP is the independent law firm representing Rice. Plaintiffs have not proved, or alleged, any connection between Farrow-Gillespie & Heath, LLP and Mr. Curlee or his investigation. The Court therefore finds this request to be subject to the same analysis as RFP Nos. 1, 2, 3, and 4.

For the same reasons that Defendants' Motion is granted as to RFP Nos. 1, 2, 3, and 4, the Court GRANTS Defendants' Motion as to RFP No. 10.

*RFP No. 11: Produce any and all documents regarding Rice's return to work at UPS and any conditions surrounding his return to work at UPS between March 1, 2011 and May 1, 2011.*

The Court finds this request to be subject to the same analysis as RFP No. 2, except that the communication is slightly more focused, as the time range is shorter and the specification with respect to work – namely, only Rice's return – is narrower. That said, it is encompassed by RFP No. 2 and has no limitation or relation to Mr. Curlee or his investigation or claims.

For the same reasons that Defendants' Motion is granted as to RFP No. 2, the Court GRANTS Defendants' Motion as to RFP No. 11.

> *Subpoena Request No. 2: Any and all communication between [Rice] and UPS Human Resources personnel, including but not limited to Georgina Banes and/or Carlos Barrera, between January 26, 2011 and May 1, 2011 regarding [Rice's] suspension from work, administrative leave, or release from service at work however it was characterized.*

The Court finds this request to be subject to the same analysis as RFP Nos. 2 and 11, except that the communication requested would be between a specific individual or UPS Department and Rice and perhaps cover a more narrow topic of employment. But the fact remains that there is no demonstrable connection to Mr. Curlee, his investigation, or his claims.

For the same reasons that Defendants' Motion is granted as to RFP No. 2, the Court GRANTS Defendants' Motion as to Subpoena Request No. 2.

> *Subpoena Request No. 3: Any and all communication between [Rice] and UPS Human Resources personnel, including but not limited to Georgina Banes and/or Carlos Barrera, between January 26, 2011 and May 1, 2011 regarding [Rice's] return to work at UPS.*

The Court finds this request to be subject to the same analysis as Subpoena Request No. 2, except that the communication is limited to a different area of Rice's

employment – his return to work. For the same reasons that Defendants' Motion is granted as to Subpoena Request No. 2, the Court GRANTS Defendants' Motion as to Subpoena Request No. 3.

Subpoena Request No. 6 also falls into this category of documents. Because the Court already granted Defendants' Motion with respect to Subpoena Request No. 6, the Court need not address it again under this category of documents.

**3. Rice's settlement agreement with UPS.**

> *RFP No. 7: Produce any and all settlement agreements or agreements of any form entered into by UPS with Rice after January 27, 2011.*

Plaintiffs argue the settlement or other agreements are relevant to demonstrating Rice's bias or prejudice. Again, the Court is not convinced that the settlement agreement will demonstrate bias or prejudice as it relates to the elements of the claims that Plaintiffs are pursuing. And there is no indication that Rice has any personal knowledge of the events that Mr. Curlee claims to have transpired or that anything relevant to those events would be revealed through this discovery request.

The Court finds that this request appears to be a fishing expedition, especially in light of the extensive discovery already taken by Plaintiffs. The Court GRANTS Defendants' Motion as to RFP No. 7.

> *RFP No. 8: Produce any and all settlement agreements or agreements of any form entered into by UPS with Rice related to his employment after January 27, 2011.*

The Court finds this request to be subject to the same analysis as RFP No. 7, except that the scope is slightly narrower in that it requests only agreements, settlement or otherwise, related to employment. That said, it is encompassed by RFP

No. 7 and has no limitation or relation to Mr. Curlee or his investigation or claims.

For the same reasons that Defendants' Motion is granted as to RFP No. 7, the Court GRANTS Defendants' Motion as to RFP No. 8.

*Subpoena Request No. 1(c): Any and all communication between [Rice] and UPS between January 27, 2011 and May 1, 2011 regarding any of the following: Discussions and drafts of settlements, agreements or proposals to compromise [Rice's] claims, if any, against UPS.*

The Court finds this request to be similar to RFP No. 7, except that the scope is slightly more defined in that it requests only communications related to agreements, settlement or otherwise, to compromise Rice's claims and is directly limited to Rice. But the Court is still uncertain how it relates to Mr. Curlee or his claims or how it would demonstrate bias or prejudice on Rice's part as it relates to Mr. Curlee's claims.

The Court GRANTS Defendants' Motion as to Subpoena Request No. 1(c).

*Subpoena Request No. 4: The document or communication which was the first communication between you and UPS regarding reaching a written settlement agreement, buy-out, pay guarantee or other retention agreement regardless of who initiated the first such communication.*

The Court finds this request to be similar to Subpoena Request No. 1(c), except that it seeks a specific document already encompassed by Subpoena Request No. 1(c). For the same reasons that Defendants' Motion is granted as to Subpoena Request No. 1(c), the Court GRANTS Defendants' Motion as to Subpoena Request No. 4.

*Subpoena Request No. 7: The original draft/proposal, any alternate proposals and the final signed agreement between you and UPS following the January 27, 2011 meeting with UPS regional security, corporate security and/or district security as referenced by [Rice] in [his] Oral Deposition of January 17, 2014 (See Excerpts, Chris Rice Depo., at Exhibit "1").*

Plaintiffs argue the settlement or other agreements are relevant to

demonstrating Rice's bias or prejudice. But, again, the Court is not convinced that the settlement agreement, or any drafts thereof, will demonstrate bias or prejudice as it relates to the elements of the claims that Plaintiffs are pursuing. And, again, there is no indication that Rice has any personal knowledge of the events that Mr. Curlee claims transpired or that anything relevant to those events would be revealed through this discovery request.

The Court finds that this request appears to be a fishing expedition. As such, the Court GRANTS Defendants' Motion as to Subpoena Request No. 7.

**4. Rice's preparation for his deposition in this case.**

> *Subpoena Request No. 10: Any and all correspondence between [Rice] and UPS regarding your deposition testimony or preparation for your deposition testimony given on January 17, 2014 in this Lawsuit.*

Defendants argue that this request seeks privileged information and therefore seek relief from responding to it. The undersigned finds that the Court need not reach the issue of privilege because the request seeks irrelevant information, especially in light of the fact that Plaintiffs have taken Rice's deposition and could have explored this topic and whether it might have relevance to Plaintiff's claims during his deposition. Moreover, at its core, this request is similar to – only broader than – Subpoena Request No. 1. Plaintiffs have not demonstrated how these communications would be relevant to the elements of Plaintiffs' claims for false imprisonment or intentional infliction of emotional distress.

The Court acknowledges that there <u>could</u> be a relevant (under broad discovery standards) document but finds it highly likely that many of the communications would

be irrelevant, as the request would cover communications related to the logistics of the deposition, or of Mr. Rice's settlement, which the Court has found to not be relevant based on Plaintiffs' current claims, or numerous other issues. As such, the Court does not find any connection to Plaintiffs' claims and instead views this request as a fishing expedition that would impose an undue burden and expense.

The Court also finds this request to be subject to a similar analysis as Subpoena Request No. 1.

For all of these reasons, the Court GRANTS Defendants' Motion as to Subpoena Request No. 10.

**5. Requests Not Covered in Defendants' Motion.**

Defendants request that the Court enter a protective order "alleviating UPS from the burden of responding to Plaintiffs' Third Requests for Production." *See* Dkt. No. 31 at 5, 16. But Defendants failed to include RFP Nos. 6 and 12 in their request for protective order. *See id.* at 7 nn.5-9. But the Court has reviewed these requests. In light of Defendants' request to be relieved from the burden of further responding in to the Third RFPs and the similarity of RFP Nos. 6 and 12 to other requests, the Court will review and address these requests – bearing in mind that Defendants bear the burden on their motion – in light of the fact that their omission was apparently an oversight and to avoid additional motion practice that may – and, as discussed below, ultimately is – unnecessary and inefficient.

> *RFP No. 6: Produce any and all communication UPS received from Rice or counsel representing Rice from January 27, 2011 to May 1, 2011.*

This request is similar to RFP Nos. 1, 2, 3, 4, 9, and 10, only broader. It covers all communications, without limitation to their subject-matter. These communications could pertain to any number of unrelated topics. For the same reasons that Defendants' Motion is granted as to RFP Nos. 1, 2, 3, 4, 9, and 10 and because it is overly broad and duplicative, the Court GRANTS Defendants' Motion as to RFP No. 6.

> *RFP No. 12: Produce any and all communications between UPS and Rice regarding his return to work at UPS and any conditions surrounding his return to work at UPS between March 1, 2011 and May 1, 2011.*

The scope of information that Plaintiffs seek through RFP No. 12 is similar to the information sought by RFP Nos. 2, 4, and 11, although the time frame is narrowed in RFP No. 12. The Court finds this request to be subject to the same analysis as RFP Nos. 2, 4, and 11, except that the communications sought are from the more limited time frame. For the same reasons that Defendants' Motion is granted as to RFP Nos. 2, 4, and 11, the Court GRANTS Defendants' Motion as to RFP No. 12.

The Court notes that Defendants do not move for a protective order with respect to RFP Nos. 13, 14, 15, and 16 from the Third RFPs, stating that no responsive documents exist. This order does not address those discovery requests.

**Conclusion**

Defendants' Motion for Protective Order [Dkt. No. 31] is GRANTED.

Out of an abundance of caution, the Court will enter this Memorandum Opinion and Order under seal because Plaintiff's response was filed under seal. *See* Dkt. No. 39. The parties are further ORDERED to file a joint status report by **May 21, 2014** setting forth their views on whether this Memorandum Opinion and Order contains

any confidential information and should therefore remain sealed.

SO ORDERED.

DATED: May 14, 2014

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE