IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICKEY CURLEE and BRIDGETTE CURLEE, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:13-cv-344-P |
| UNITED PARCEL SERVICE, INC. (OHIO), and UNITED PARCEL SERVICE CO., | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

United States District Judge Jorge A. Solis has referred three discovery motions to the undersigned magistrate judge for determination. *See* Dkt. No. 88. Plaintiffs Rickey Curlee and Bridgette Curlee have filed a motion for extension of time for the limited purpose of taking a Federal Rule of Civil Procedure 30(b)(6) deposition and a combined motion for ruling on objections and to compel discovery. *See* Dkt. Nos. 83 & 86. Defendant United Parcel Service, Inc. (Ohio) has filed a motion to compel production of documents. *See* Dkt. No. 84. The Court held a hearing on the motions on August 29, 2014. *See* Dkt. No. 112. For the reasons explained below, the motions are granted or granted in part and denied in part as explained below.

## Legal Standards and Analysis

### I.    Plaintiffs' Motion to Extend Time

Plaintiffs filed a motion to extend the discovery deadline for the limited purpose

of allowing Plaintiffs to depose Defendant's designated corporate representative to testify about Defendant's net worth and prove up documents as business records. *See* Dkt. No. 83. Defendant filed a reply, *see* Dkt. No. 98, and Plaintiff filed a response, *see* Dkt. No. 108. The discovery deadline was July 31, 2014. *See* Dkt. No. 72.

On December 20, 2013, Plaintiffs served Defendant with a deposition notice under Rule 30(b)(6) for Defendant's designated corporate representative. One of the listed matters for examination was "[a]ny and all documents produced by [Defendant] relating in any way to these listed topics, including whether such documents are true and correct copies of the originals." *See* Dkt. No. 83 at 9-10, 13. Defendant objected "to this deposition topic because it is overly broad, unduly burdensome, vague, harassing, fails to describe with reasonable specificity the subject matter of the questions to be asked and is an improper use of Federal Rule of Civil Procedure 30(b)(6)" and because "it is unreasonable and seeks to impose an unreasonable burden on [Defendant] when compared to the potential benefit of such information." Dkt. No. 99-1 at 1, 4.

On June 6, 2014, Plaintiffs served Defendant with a supplemental Rule 30(b)(6) deposition notice, which listed one of the matters for examination as "[t]he net worth of [Defendant] and any forecasted changes in such net worth between now and the time of trial." Dkt. No. 83 at 22-23, 30.

Defendant's corporate representative Carlos Barrera was deposed on June 13, 2014. *See id.* at 34. During the deposition, counsel for Plaintiff and counsel for Defendant agr to the following stipulation:

First, we have a stipulation between the parties ... this witness has been

designated, among other things, to talk about the business records status or business record prove up of documents that have been produced in this case from UPS. And the parties have agreed that if the document was created by UPS and produced in the case by UPS, that the stipulation is that those documents are, without going through each and every one of them, those documents are stipulated to be the business records of United Parcel Services.

There is one caveat ... and that is if UPS discovers a document that was produced by UPS, was created by UPS but which they would like to re-visit their stipulation for some specific reason that they have ... that document can be identified by them and that they can withdraw their stipulation as to that particular document provided they have appropriate grounds to withdraw that.

Dkt. No. 109-1 at 2-3. Thereafter, the parties disagreed as to whether the stipulation required Defendant to authenticate documents produced by Defendant as business records subject to the Federal Rule of Evidence 806(b) hearsay exception.

On July 24, 2014,Plaintiffs served Defendant with another Rule 30(b)(6) deposition notice for Defendant's designated corporate representative. The matters for examination include thirty-five new topics concerning the authentication of all 2,726 documents produced by Defendant during this litigation as business records and one topic concerning Defendant's net worth. *See id.* at 40-53.

Defendant objected to the July 24 deposition notice because Plaintiff had already taken 11 depositions, including two lengthy Rule 30(b)(6) corporate representative depositions; Plaintiff had exceeded the 10 depositions allowed by Federal Rule of Civil Procedure 30(a)(2), which would require Plaintiff to seek leave of court to take additional depositions; and the matters of examination were excessively burdensome.

A.   <u>Net Worth</u>

A defendant's net worth is relevant in a suit involving exemplary damages. *See Lunsford v. Morris,* 746 S.W.2d 471, 473 (Tex. 1988) (orig. proceeding), *overruled on other grounds*, *Walker v. Packer*, 827 S.W.3d 833, 842 (Tex. 1992); *Wright v. Weaver*, No. 4:07-cv-369, 2009 WL 5170218, at *4 (E.D. Tex. Dec. 18, 2009) ("Evidence of net worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim."). Moreover, "under Texas law, a party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a prima facie showing of entitlement to punitive damages, before discovery of net worth is permitted." *In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App. – Houston [14th Dist.] 2009, orig. proceeding) (citations omitted).

Defendant contends that Plaintiff's compensatory and punitive damages are capped and that it is common knowledge that Defendant is a large, well-established, financially solid company. Defendant also asserts that it is willing to stipulate that its net worth is more than a specified amount that will cover any potential damages award that Plaintiffs might receive within the limitations imposed by the caps under Texas Civil Practices and Remedies Code § 41.008.

In their reply, Plaintiffs do not dispute that their damages are capped or contend that Defendant's net worth is insufficient to cover any potential damages award. At the hearing, Plaintiff agreed that an admissible stipulation as to Plaintiff's net worth would resolve this matter but requested that the stipulation include reference to Defendant's net worth being in excess of a specific dollar amount and not just in excess

of Plaintiff's potential punitive damages award.

In accordance with the parties' agreement at the hearing, the Court ORDERS Defendant to provide Plaintiff with an admissible stipulation stating that Defendant's net worth is in excess of $50 million, the amount discussed at the hearing, or another specific dollar amount acceptable to Plaintiff, by **Friday, September, 5, 2014**. This agreement to provide a stipulation also resolves Plaintiff's motion to compel Defendant's response to Plaintiffs' Request for Production No. 44, requesting "the most recent audited financial balance sheet" for Defendant. Dkt. No. 86-1 at 20.

B.   <u>Business Records</u>

The December 20, 2013 deposition notice was broad enough to require Defendant to designate a corporate representative to testify concerning whether documents produced by Defendant were subject to the business records hearsay exception. And, even if the notice itself was not so broad, Defendant is bound by the stipulation entered into by its counsel during the deposition expressly referring to proving up Defendant's business records.

Accordingly, the Court orders that by **Friday, September 5, 2014**, Defendant must provide Plaintiff with an admissible stipulation that the documents identified by Plaintiff on Exhibit A-1 of the Rule 30(b)(6) deposition notice dated July 24, 2014 (Dkt. No. 83 at 48- 53) are Defendant's business records subject to the Federal Rule of Evidence 803(6) hearsay exception and, if Defendant asserts that any of the documents identified by Plaintiff on Exhibit A-1 cannot be are not Defendant's business records, Defendant must specifically identify those documents and provide a designated

corporate representative to testify concerning authentication of those documents on or before **Tuesday, September 9, 2014**. If a deposition is necessary, the parties shall file supplemental briefs by **September 10, 2014** regarding the question of whether Defendant should bear some or all costs of the deposition.

II.   Plaintiffs' Motion for Ruling on Objections and Motion to Compel Responses to <u>Plaintiff's Discovery</u>

Plaintiffs seek to compel responses to their First Requests for Production. *See* Dkt. No. 86. Defendant served its objections and responses to the requests for production on September 13, 2013. *See* Dkt. No. 86-1. Sometime in March 2014, Plaintiffs sent a proposed, unfiled motion to compel to Defendants, and, on March 25, 2014, Defendant's attorney responded with a letter offering specific proposed amendments to its objections and responses. *See* Dkt. No. 86-2. Plaintiffs did not respond to the letter and filed the pending Motion to Compel on the last day for discovery in this case. *See* Dkt. Nos. 60, 85. In their Reply, Plaintiffs withdraw their Motion to Compel as to documents Bates numbered 768-771, 815-816, and 1529 and the BAI Power Point. *See* Dkt. No. 108 at 2 n.2.

A.   <u>Matters withdrawn by agreement of the parties</u>

On the eve of the hearing, the parties resolved their disputes as to Defendant's objections and responses to Requests for Production Nos. 11, 14, 20, 22, 32, 53, 55, 56, 57, 58, and 61, and Plaintiffs withdrew their motion to compel as to those requests for production at the hearing. At the hearing, Plaintiffs also withdrew their motion to compel production of unredacted versions of certain other documents produced by

Defendant. *See* Dkt. No. 86 at 5-6. Therefore, those matters are no longer before the Court.

      B.      <u>Request for Production No. 50 (Corporate Security Manual)</u>

      Plaintiffs requested documents concerning Defendant's corporate policies and procedures. *See* Dkt. No. 86-1 at 22-23 (RFP No. 50). In response, Defendant produced its Corporate Security Manual but redacted portions of the manual on the basis that they are protected by the attorney-client privilege. *See* Dkt. No. 86-3 at 2-3 (privilege log). Defendant supplemented its response and produced three of the redacted sections. But it continues to assert the attorney-client privilege as to four sections of the manual: Section 28 — Contact with Legal Counsel; Section 29 — Criminal and Civil Law; Section 30 — Reporting Employee Crime and Maintaining Corporate Integrity; and Section 31 — Courtroom Testimony. After the hearing, and with the Court's authorization, on August 29, 2014, Defendant's counsel submitted a copy of the Corporate Security Manual, including unredacted pages for these four sections, to the Court for possible *in camera* review.

      This Court sitting in this diversity case applies the Texas attorney-client privilege. *See* FED. R. EVID. 501; *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Under Texas law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. *Id.* (citing TEX. R. EVID. 503(b)). The burden is on the party asserting the privilege to demonstrate how

each document satisfies these elements. *See id.* at 473. A general allegation of privilege is insufficient to meet this burden. *See id.* Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *See id.* Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id.* at 473-74. In fact, "resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Id.* at 474 (internal quotation marks omitted; emphasis in original).

Communications between a corporation and its inside counsel are protected in the same manner and to the same degree as communications with outside counsel. *See United States v. Mobil Corp.*, 149 F.R.D. 533, 537 (N.D. Tex. 1993). But the privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. *See Navigant*, 220 F.R.D. at 474.

Defendant argues that the redacted sections of the Security Manual, by their titles alone, show that they involve attorney-client communications between Defendant and its in-house attorneys. Defendant's attorneys also asserts in the Response that the Security Manual is a restricted document accessible only to Corporate Security employees who have received clearance to access United Parcel Service's Security SharePoint system and that no other employees have access to the Security Manual.

*See* Dkt. No. 98 at 16. But Defendant has offered no evidence to substantiate the attorney's assertion and only offers in its response to do so if necessary – which it is. The Court offered at the hearing to allow Defendant to submit the unredacted pages of the manual to the Court for *in camera* review but did so with the caveat that it would undertake the review only if it is appropriate under all of the circumstances and the standards laid out above. Here it is not. Despite Plaintiff's motion's clearing laying out what proof was required by Defendant, *see* Dkt. No. 87 at 4-5, Defendant still has not proven up the elements of privilege, including, for example, what attorneys wrote these sections of the manual.

The Court finds that Defendant has failed to meet its burden to show that the redacted Security Manual sections are protected from disclosure by the attorney-client privilege, overrules Defendant's objections, and ORDERS that the redacted pages must be produced in unredacted form by **Friday, September 5, 2014**.

C.    Request for Production No. 33

Plaintiffs requested documents reflecting investigations of complaints against the loss prevention personnel who questioned Rickey Curlee on January 26, 2011, for unlawful harassment, abuse of authority, improper supervisory conduct, related employment guidelines or other rights violations from seven years prior to the date of incident to the present. *See* Dkt. No. 86-1 at 17. Defendant objects to the request as being overbroad and unduly burdensome. *See id.* At the hearing the Court overruled in part and sustained in part those objections, and the parties reached agreement on the reasonable scope of this request. Defendant then represented at the hearing that

it is not withholding any documents responsive to this request based on that understanding. Plaintiff requested at the hearing that Defendant conduct the same scope of search for the requested items as to each of the loss prevention employees as it used to investigate Mr. Curlee, and Defendant agreed to do so or to double check to the extent that it had already conducted such a search.

Accordingly, the Court orders to Plaintiff to supplement its response to Request for Production No. 33 by **Friday, September 5, 2014**, and either produce additional documents or state, without objection, that it has not located any responsive documents.

  D. <u>Documents requested in Rule 30(b)(6) duces tecum</u>

Plaintiffs requested document showing each Division Manager's and Operations Manager's total compensation in the Dallas Division for the years 2010 through 2013 in a subpoena duces tecum to a Rule 30(b)(6) deposition notice. *See* Dkt. No. 86-6 at 11-12. Plaintiffs state that Defendant refused to produce these documents. *See id*. Defendant argues that it objected to the requests as overly broad and not relevant. *See* Dkt. No. 98 at 23-25. Defendant's objections are not included in the record; however, at the hearing Defendant reiterated that the requested documents are not relevant because this is not an employment discrimination case.

The Court concludes that the requested information is relevant to Plaintiff Rickey Curlee's claims for lost wages. Accordingly, as discussed at that hearing, the Court ORDERS that, by **Friday, September 5, 2014**, Defendant must provide an admissible stipulation to Plaintiff with the range of the salary for each of the two

positions for the last two years at the location where Mr. Curlee was working on January 26, 2011.

II.     Defendant's Motion to Compel Production of Documents

Defendant filed a motion to compel three categories of documents: (1) notes prepared by Plaintiff Bridgette Curlee; (2) a memorandum prepared by Plaintiffs' attorney after a pre-suit communication with United Parcel Service Manager Jonathan Mills; and (3) documents responsive to Request for Production Nos. 5 and 11 in Defendant's Third Requests for Production. *See* Dkt. No. 84. In its Reply and at the hearing, Defendant withdrew the motion as to Requests for Production Nos. 5 and 11. *See* Dkt. No. 105 at 1 n.1.

A.     Bridgette Curlee's notes

Plaintiffs sued Defendant for false imprisonment, intentional infliction of emotional distress, and civil conspiracy based on allegations that Defendant Rickey Curlee was wrongfully detained and interrogated by Defendant. *See* Dkt. No. 38. Rickey Curlee talked to his wife, Bridgette Curlee, about the detention when he returned home that evening and the following day. Bridgette Curlee made handwritten notes of their conversations on January 26, 2011 and January 27, 2011, which she later reduced to typewritten form. Later, Plaintiffs retained an attorney and gave the notes to their attorney.

Rickey Curlee mentioned the notes during his deposition, *see* Dkt. No. 85-1 at 72-73, and Defendant subsequently submitted requests for production seeking them, *see id.* at 23, 33 (third requests for production). Plaintiffs objected to producing the

-11-

notes and asserted the spousal communication privilege and attorney-client privilege. *See id.* at 43-44, 53, 58-59, 68; *see also id.* at 81 (asserting spousal communications privilege in response to first requests for production).

Plaintiff's offered to produce the notes subject to a stipulation that the notes were protected by the spousal communication privilege and their right to assert the privilege would not be waived by disclosure of the notes to Defendant. *See* Dkt. No. 96-1 at 20-22. Defendant would not agree to the proposed stipulation because it would not agree that the notes were privileged, even though it would agree that production of the notes would not result in waiver of the asserted privilege. *See id.* at 68. Defendant now seeks to compel production of the notes. Plaintiffs submitted the notes under seal for *in camera* review. *See* Dkt. No. 97.

This is a diversity case, and, therefore, Texas privilege law applies. *See Doe v. St. Stephen's Episcopal School*, No. C-08-299, 2009 WL 1835155, at *5 (S. D. Tex. June 26, 2009); *see also* FED. R. EVID. 501. Texas Rule of Evidence 504 provides that "[a] person ... has a privilege during marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to the person's spouse while they were married." TEX. R. EVID. 504(a)(2). The privilege may be claimed by the spouse or the spouse's representative. *See id.* 504(a)(3). There is no dispute that the notes memorialize confidential conversations between Plaintiffs, who are husband and wife, and that those notes were not shared with a third party until Plaintiffs retained an attorney and gave the notes to their attorney. And, in any event, Plaintiffs submitted a Declaration of Bridgette Curlee proving up the privilege. *See* Dkt. 96-1, Ex.

B.

Defendant content that the privilege has been waived because it was not timely asserted. Plaintiffs asserted the spousal communication privilege in their objections and responses to Defendants' First Requests for Production, but, in Plaintiffs' privilege log, they claimed only the attorney-client privilege and attorney work product protection as to handwritten and typed notes concerning the events of January 26, 2011 and two other dates. *See* Dkt. No. 85-1 at 81, 104. Defendant contends that the failure to claim the spousal communication privilege on the privilege log resulted in waiver. Plaintiffs objected to the requests for production because they were overbroad, in part, because they sought information protected by the spousal communication privilege. The Court finds that Plaintiffs did not waive the privilege by failing to list it in the privilege log in response to Defendants' first requests for production because it was included in the body of the overbreadth objection.

Defendant also contends that Plaintiffs cannot sue for loss of consortium and offensively use the privilege to prevent disclosure of the notes. Under Texas law, "[a] plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may a bearing upon his right to maintain his action." *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985).

Defendant cites to *Ledbetter v. Wal-Mart Stores, Inc.*, in which the United States District Court for the District of Colorado, applying Colorado state law, found the spousal communications privilege was waived by bringing a claim for loss of

consortium. *See* No. 06-cv-1958-WYD-MJW, 2009 WL 1067018, at *1 (D. Colo. April 21, 2009) (citing Colorado Supreme Court cases). Defendant also cites to *Powell v. United Parcel Service, Inc.*, in which the United States District Court for the Southern District of Indiana found that the spousal communications privilege had been waived by placing the spouses health and marriage at issue. *See* No. 1:08-cv-1621-TWP-TAB, 2011 WL 124600, at *3 n.4 (S.D. Ind. Jan. 13, 2011).

Texas courts have not addressed the issue. *See In re Corcoran*, No. 14-12-00045-CV, 2012 WL 590813, at *2 (Tex. App. – Houston [14th Dist.] 2012, no pet.) (denying mandamus relief because relator cited no authority holding that offensive use waiver applies to spousal communications privilege). The Texas Supreme Court has recognized that privileges "represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found." *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex. 1983). To determine whether a party has waived a privilege by using it offensively, the Court must consider three factors: (1) whether the party asserting the privilege is seeking affirmative relief; (2) whether the party is using the privilege to protect outcome determinative information; and (3) whether the protected information is not otherwise available to the defendant. *See id.*

Here, Plaintiffs seek affirmative relief through their loss of consortium claim. Based on the Court's *in camera* review of the notes, the spousal communications privilege is not being used to protect information concerning Plaintiffs' loss of consortium claim, and the information in the notes is otherwise available to Defendant through discovery. Therefore, the Court concludes that Plaintiffs' have not waived their

-14-

spousal communications privilege as to Bridgette Curlee's notes, and Defendant's motion to compel production of those documents is denied.

But the notes are not protected by the attorney-client privilege simply because they were given to Plaintiffs' attorney. *See Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 300 n.57 (5th Cir. 2010) ("[T]urning documents over to one's lawyer does not automatically cloak those documents in attorney-client privilege."); *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997) ("It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer."). Plaintiffs' attorney could assert the spousal communication privilege concerning the notes on Plaintiffs' behalf without also invoking the attorney-client privilege, and attorney-client privilege does not apply to Bridgette Curlee's notes.

   B.    Jonathan Mills communications

Defendant seeks to compel production of a memorandum made by one of Plaintiffs' attorneys after a conversation with United Parcel Service Manager Jonathan Mills. *See* Dkt. No. 85-1 at 46 (Third Request for Production No. 9). Plaintiff's counsel has submitted an affidavit in which she testifies that she spoke briefly with Mr. Mills on or about December 6, 2012 during the course of investigating Plaintiffs' claims and then documented her notes from the conversation in a confidential memorandum. *See* Dkt. No. 96-1, Ex. A. The lawsuit was filed on January 25, 2013, and her conversation with Mr. Mills occurred prior to the filing of the lawsuit. *See id.* at 3. Plaintiffs asserted attorney work product protection in response to requests for production seeking the

memorandum. *See* Dkt. No. 85-1 at 46-67, 53, 61, 68.

Defendant contends that Plaintiffs' counsel's communication with Mr. Mills violates Texas Disciplinary Rule 4.02's so-called no-contact rule, which provides that "[i]n representing a client, a lawyer shall not communicate ... about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005). For purposes of the rule, "organization or entity of government" includes persons with managerial responsibility. *See id.* at R. 4.02(c).

Defendant argues that Plaintiffs cannot assert the work product protection as to materials their attorney obtained in violation of the professional rules of conduct. *See Stabilus v. Haysnworth, Baldwin, Johnson & Greaves*, Civ. A. No. 91-6184, 1992 WL 68563, at *2-3 (E.D. Penn. Mar. 31, 1992). "The purpose of the work product privilege is to protect the integrity of the adversary process; therefore, it would be improper to allow an attorney to exploit the privilege for ends that are antithetical to that process." *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983). And "'a lawyer's unprofessional conduct may vitiate the work product privilege.'" *Id.* at 1271 (quoting *Moody v. IRS*, 654 F.2d 795, 799-800 (D.C. Cir. 1981)).

The record is silent as to whether Plaintiff's counsel knew or inquired whether United Parcel Service or Mr. Mills was represented by an attorney regarding the subject of Rickey Curlee's detention at the time of the pre-suit investigation. But the

party resisting discovery by asserting any claim of privilege or protection bears the burden of proof to substantiate the privilege or protection claim – which the Court concludes, under these circumstances, includes proving that the materials at issue were not obtained in violation of the professional rules of conduct. *See Enron Corp. Sav. Plan v. Hewitt Assoc., L.L.C.,* 258 F.R.D. 149, 160 (S.D. Tex. 2009).

Under the circumstances, and for purposes of this motion, the Court need not determine whether or find that counsel violated the ethics rules by contacting Mr. Mills without his or UPS's counsel's consent. Rather, on the state of the record here, the Court finds that Plaintiff has failed to meet its burden to prove that the Jonathan Mills memorandum is subject to work product protection because Plaintiff has failed to show that counsel's communication with Mr. Mills was not improper under the disciplinary rules. Therefore, Plaintiffs must produce the memorandum.

## Conclusion

Plaintiff's Motion to Extend Time [Dkt. No. 83] is GRANTED in part and DENIED in part as explained above. Plaintiffs' Motion for Ruling on Objections and Motion to Compel Responses to Plaintiff's Discovery [Dkt. No. 86] is GRANTED as explained above. Defendant's Motion to Compel Production of Documents [Dkt. No. 84] is GRANTED in part and DENIED in part.

The undersigned ORDERS that on or before Friday, September 5, 2014:

(1)     Defendant shall provide to Plaintiffs an admissible stipulation of its net worth stated in a specific dollar amount;

(2)     Defendant shall provide to Plaintiffs an admissible stipulation as to whether the documents identified by Plaintiff in Exhibit A-1 to Plaintiffs'

Notice of Intent to Take the Oral and Videotaped Deposition of the United Parcel Service, Inc. Corporate Representative Under Rule 30(b)(6) are business records or not, and if not, Defendant shall produce a designated corporate representative for deposition on or before Tuesday, September 9, 2014, to testify concerning those documents, and, if a deposition is necessary, the parties shall file supplemental briefs by September 10, 2014 regarding the question of whether Defendant should bear some or all costs of the deposition;

(3)     Defendant shall produce to Plaintiffs unredacted copies of Sections 28, 29, 30, and 31 of the Corporate Security Manual;

(4)     Defendant shall produce to Plaintiffs additional documents responsive to Request for Production No. 33 or respond, without objection, that there are no responsive documents;

(5)     Defendant shall provide to Plaintiffs an admissible stipulation stating the range of total compensation for the Division Manager and the Operations Manager for the last two years at the location where Mr. Curlee was employed on January 26, 2011;

(6)     Plaintiffs shall produce to Defendant the Jonathan Mills Witness Statement; and

(7)     The parties shall file a Joint Status Report informing the Court whether the matters addressed at the August 28, 2014 hearing have been resolved as required by this Order.

By **September 2, 2014**, Defendant's counsel is ORDERED to retrieve from Vila Fisher in the Clerk's Office the copy of the Corporate Security Manual, including the unredacted pages at issue, submitted to the Court for *in camera* review.

SO ORDERED.

DATED: August 29, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-18-